UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROSA HERNANDEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No.  SA:10-CV-01051-OLG |
| § | |
| MICHAEL J. SCOTT, P.C., § | |
| § | |
| Defendant. § | |
| § | |

## DEFENDANT SCOTT'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Michael J. Scott, P.C., (herein "Scott"), through counsel of record, and files this Motion for Sanctions under 28 U.S.C. § 1927 as follows:

### I.

### BACKGROUND

1. This case began when Scott attempted to collect a debt for Capital One Bank. Defendant's Appendix ("Def. App.") at 2. Plaintiff alleges that on October 27, 2009, Jerome S. Lamet, an attorney for Debt Counsel for Seniors and the Disabled (herein "DCSD"), faxed a cease and desist and notice of representation letters to Scott stating that Lamet represented her for the purpose of enforcing rights allegedly violated under applicable federal statutes. Def. App. at 1-3. However, nothing in the letter suggested that Mr. Lamet planned to represent Plaintiff in the underlying debt matter. Def. App. at 9

2. On April 9, 2010, Scott received a letter from Mr. Lamet stating that he did *not* represent Plaintiff with regard to the state court lawsuit on the underlying debt and notified Scott that he would not be appearing on her behalf. Def. App. at 15. Lamet stated again that he only

represented Plaintiff in the case of any Fair Debt Collection Practices Act ("FDCPA") or Social Security Act violation. *Id*. Following this, Capital One obtained a default judgment against Plaintiff on August 12, 2010 for the amount of $3,585.55. Def. App. at 16. On October 10, 2010, Scott sent Plaintiff a letter notifying Plaintiff of the court-ordered judgment, with an offer of settlement options. Def. App. at 12.

4. On December 28, 2010, Plaintiff filed this lawsuit claiming that Scott violated the Fair Debt Collection Practices Act ("FDCPA") by:

- Contacting Plaintiff after she obtained counsel in violation of 15 U.S.C. § 1692c(a)(2), and

- Communicating with Plaintiff after a cease and desist letter in violation of 15 U.S.C. § 1692c(c).

Scott filed its Original Answer and its Certificate of Interested Parties on January 25, 2011. *See* Docket Entry "Doc." 4 and 5. Discovery was ordered to be conducted over a period of five months. *See* Doc. 6. Scott served discovery on Plaintiff where Plaintiff admitted Lamet and DCSD did not represent her on the underlying debt or provide her with legal advice. *See* Def. App. at 17. Before discovery was concluded, Scott filed his Motion for Summary Judgment June 7, 2011. *See* Doc. 9.

5. Scott alleged that Plaintiff and her counsel filed this lawsuit for improper purposes, namely to harass Scott and drive up attorney's fees. Scott now requests that this court grant sanctions under 28 U.S.C. § 1927, based on a lack of factual investigation as well as the incidents described above.

## II.

## **MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927.**

28 U.S.C. § 1927 provides in pertinent part:

**DEFENDANT SCOTT'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 Page 2**

> An attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. To justify such sanctions, the three elements of the statute must be met. First, an attorney must engage in unreasonable and vexatious conduct. Second, this conduct must multiply the proceedings. Third, the amount of the sanction cannot exceed the costs incurred due to the unreasonable conduct. *See Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003).

5.  Sanctions under 28 U.S.C. § 1927 require "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) (quoting *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002)). Under § 1927, the Fifth Circuit generally requires a detailed finding that the proceedings were both "unreasonable" and "vexatious." *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). Thus, the Court must make a separate determination on both the issue of the reasonableness of the claims and the purpose for which suit was instituted. *Calhoun*, 34 F.3d at 1300 (citing *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).

6.  A determination of bad faith, satisfying the "unreasonable" prong, is proper where an attorney knowingly or recklessly pursues a frivolous claim. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1544 (11th Cir. 1993); *Manax v. McNamara*, 842 F.2d 808, 814 (5th Cir. 1988). An improper motive, which satisfies the "vexatious" prong, does not necessarily refer to bad faith or intent to harass. *Ratliff v. Stewart*, 508 F. 3d 225, 235 n. 13 (5th Cir. 2007). Vexation implies something broader than that. *Id.*

7.  To "vex" is defined, among others things, as "to bring trouble or distress to," "to subject

to mental suffering," or "to irritate or annoy," as well as "to tease or torment." *Id.* (quoting Webster's Third New International Dictionary of the English Language 2548 (1981)). Consistent with this, in *Calhoun* the Fifth Circuit did not hold that the only way to establish an "improper purpose" is by showing bad faith. *Ratliff*, 508 F.3d at 235 n. 13. Indeed, any "reckless disregard of the duty owed to the court" can suffice. *Id.* (citing *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998)).

8.      When an attorney's conduct is so obviously unreasonable that a court can infer an "improper purpose" from the fact that the attorney persisted in it, it is unnecessary for the court to explain at length why the vexatiousness prong has been met. *Ratliff v. Stewart*, 508 F. 3d 225, 234 (5th Cir. 2007). "Like a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award." *Id.* (quoting *Thomas v. Capital Security Services*, 836 F.2d 866, 883 (5th Cir. 1988) (en banc)).

9.      Section 1927 may only be applied to punish attorneys.[1] *Proctor & Gamble*, 208 F.3d at 525.  Only fees and costs associated with "the persistent prosecution of a meritless claim" may be awarded. *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991).  When the entire course of proceedings were unwarranted and should neither have commenced nor persisted in, an award under § 1927 may shift the entire financial burden of an action's defense. *Id.*

---

[1] Even though the FDCPA provides for an award of attorney's fees and costs to a defendant upon a finding that the plaintiff brought an action in bad faith and for the purpose of harassment, *see* 15 U.S.C. § 1692k(a)(3), Scott is not pursuing such a remedy in this case because it appears that the FDCPA does not permit an award of attorney's fees and costs against a plaintiff's attorney. *See Hyde v. Midland Credit Management, Inc.*, 567 F.3d 1137, 1141 (9th Cir. 2009) ("Based on the text and legislative history of § 1692k(a)(3), on our decision in *Pfingston* under the FCA, and on the presumption against awarding attorney's fees against attorneys, we believe that the better analysis of § 1692k(a)(3) is that it authorizes attorney's fees and costs only against the offending plaintiff or plaintiffs.").

**DEFENDANT SCOTT'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 Page 4**

### III.

### ARGUMENT AND AUTHORITIES

**The Court Should Enforce 28 U.S.C. § 1927 Against Plaintiff and Award Scott Costs and Attorney's fees.**

10.     As explained above, Plaintiff filed her lawsuit on December 28, 2010, claiming a violation of 15 U.S.C. § 1692c(a)(2), which prohibits a debt collector from communicating with a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt…", and a violation of 15 U.S.C. § 1692c(c) which prohibits communicating with Plaintiff after a cease and desist letter.

11.     Plaintiff provided Scott with a letter from the Plaintiff's alleged attorney specifically stating that he and his firm "do not represent the client with regard to this state lawsuit nor will we file an appearance on their behalf." Def. App. 15.  Instead, the firm would only represent Plaintiff in federal court on the off-chance that a violation of the FDCPA or Social Security Act occurred. *Id.* Even the most cursory glance at this letter shows that Plaintiff was not in fact represented by an attorney "with respect to such debt" as required by the FDCPA. In addition to this evidence demonstrating to Plaintiff had no representation to support the FDCPA claims, Plaintiff was also served discovery to which Plaintiff admitted she was not represented or counseled by Lamet and DCSD.  *See* Def. App. 17.  Thus, on December 28, 2010, when Plaintiff's counsel filed this lawsuit, he must have known or was at least reckless to the fact that this case was frivolous.

12.     The case continued for months after the filing. Scott answered the suit on January 25, 2011, and filed its Certificate of Interested Parties on January 7, 2011. *See* Doc. 4 and 5.   On March 7, 2011, a scheduling order was issued and the discovery period lasted for the following five months.   *See* Doc. 6.  Scott then filed its motion for summary judgment on June 7, 2011.

Doc. 9. It is clear from this evidence that after filing this frivolous lawsuit, Plaintiff multiplied the proceedings in violation of § 1927.

13.     As for the "vexatious" prong or Plaintiff's improper motive, Scott believes it can be inferred from the obvious unreasonableness of Plaintiff's filing, persistence in seeking a settlement and multiplication of the proceedings. Plaintiff's counsel filed ten (10) other lawsuits against Scott involving the Lamet letter and Mr. Lamet's alleged representation of consumers on their debts. All of these cases involved initial letters from DCSD and Lamet. Six were settled as a matter of judicial economy and conservation of Defendant's resources. Five involved default judgments being entered against plaintiffs. Four of the cases involved admissions of the plaintiff not being represented in the underlying debt. (two through a letter from Jerome Lamet, two, including this case, through a letter and admissions of the plaintiff,). *See* Def. App. 23-67. Default judgments were entered against these unfortunate plaintiffs along with the Plaintiff in the case at bar, then Krohn & Moss represented them on frivolous FDCPA claims to be statutorily limited to a $1,000 recovery on the FDCPA allegations.

14.     But even further, a recent hearing in the federal District Court for the Southern District of Texas is revealing. On August 11, 2011, Judge Hinojosa considered one of these cases, *Marion Sedesky v. Michael J. Scott, P.C.*, with both Plaintiff's and Scott's current counsel on competing motions for summary judgment. *See* Def. App. at 68.

15.     The Court, addressing the Lamet letters, pondered:

> And so it's hard to even imagine that anybody thinks that a letter that tells you we do not represent somebody in response to notice that was originally given to the attorney or Ms. Sedesky then to say, 'We do not represent her in that action. In fact, we're going to let you actually take a default judgment against her and then if there ever is a violation at some point of the Federal Debt Collection Practices Act, we plan to file a lawsuit.' I don't get it.
>
> Can you say something on behalf of Ms. Sedesky as to how she has been dumped

like this?

Def. App. at 71 (4:8-18). The Court continued,

> So you made it quite clear in the notice to her, to Mr. Scott, that you were not representing her on the debt so how is he suppose to guess that he should consult with you at all when you've made it quite clear don't send us that information, we don't represent her. Oh, but by the way we're trying to entrap you. We've sent you this letter just to put it on the record that somehow we've given you notice that we represent her on something you haven't done yet. But if you do, we're going to jump on you…We've turned the world upside down here…I don't think anybody in Congress, I don't care who they are, ever thought that this statute was going to be used for this purpose…
>
> I have no doubt that anybody in Congress ever thought that this would be what would happen here. That somebody would take on the representation of somebody, but not really from the standpoint of protecting them from a default judgment, but simply from the protection of let's try to collect some money later.

*Id.* at 72-73(5:5-6:14); 81 (14:13-18).

16.     When Plaintiff's counsel began to argue that this was "an extremely novel issue," the Court interrupted, "Novel? I don't care how novel it is, it's just wrong." *Id.* at 81 (14:19-24).

Then Judge Hinojosa got to the real heart of the matter:

> What we want here is attorney's fees that she'll never get. And that somehow the Fair Debt Collection Act was meant to enrich an attorney who lets a default or someone who lets a default judgment taken against somebody and that the most that she can collect, if they did violate this, is a $1,000…
>
> I really think that this is turning out at a statute that was meant to protect the public into a statute that would enrich someone who's being clever with regards to a case here. And I really hope that somebody has told Ms. Sedesky what course she has been placed into.
>
> That she has a judgment against her for the possibility of the most she can collect is $1,000, so that some attorneys can make a lot of money.

*Id.* at 82-83 (15:12-16:12). The Court concluded,

> The Motion for Summary Judgment of the Defendant is granted. My fact determination is that there is no way based on this record that Mr. Scott could have known that she was being represented by an[] attorney with regards to the underlying debt here.

*Id.* at 85 (18:17-21). Then the Judge asked, "Frankly, I guess, the question is should there have been Rule 11 sanctions imposed here []." *Id.* at 88 (21:11-12).

17. The facts in *Sedesky* are virtually identical to those in the present case. As characterized by Judge Hinojosa, Plaintiff's counsel attempted to "entrap" Scott by sending conflicting representation letters, allowed a default judgment to be taken against Plaintiff, and then sat back and waited for Scott to try to collect on the judgment. When he did, Plaintiff's counsel filed suit alleging an FDCPA violation in hopes of profiting from the attorney's fees. Such conduct is so unreasonable that it constitutes counsel's bad faith and most certainly warrants the inference of an improper motive. Because Plaintiff's counsel multiplied the proceedings unreasonably and vexatiously, Scott asks that the Court require Plaintiff's counsel to personally satisfy Scott's excess costs and attorneys' fees reasonably incurred as a result of such conduct.

18. Scott also brings to the attention of the Court other previous violations by this law firm representing Plaintiff. The Law Firm of Krohn & Moss has had multiple sanctions granted against them in recent lawsuits, all very similar to the case at hand. In *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fl. 2010), attorney Michael Agruss of Krohn & Moss, Ltd., amongst others, filed a lawsuit alleging five (5) separate violations of the FDCPA. After CBE filed its summary judgment motion, the Court determined that the plaintiff only had one legally plausible claim while the rest consisted of boilerplate allegations that could not possibly apply to the case. 710 F. Supp. 2d at 1306. "What is especially troubling," the court noted, "[was] that Plaintiff's counsel failed to dismiss *any* of these claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion." *Id.* Thus, "when it became apparent that discoverable evidence would not bear out the majority of the Complaint's claims, Plaintiff and his attorney failed in their duty to discontinue

their quest." *Id.* at 1307.  But "[e]ven more troubling," the court concluded, "Plaintiff's counsel, an officer of the Court, filed a complaint wherein a majority of the allegations had no basis in fact and then failed to dismiss any of these allegations…until a summary judgment motion was filed." *Id.* Accordingly, the plaintiff and his attorney were sanctioned under Rule 11. *See id.* at 1307-08.

19. Similarly, in the same month as *Tucker*, the United States District Court for the Middle District of Florida examined the case of *Rhinehart v. CBE Group, Inc.*, involving, once again, Mr. Agruss and Krohn & Moss. 714 F. Supp. 2d 1183 (M.D. Fl. 2010). After alleging five (5) boilerplate violations of the FDCPA, the Court found that "[n]ot only were the majority of the Complaint's claims utterly unsupported, Plaintiff's own deposition testimony contradicted *most* of the allegations contained in the Complaint." 714 F. Supp. 2d at 1185-86. "[A]s in *Tucker*, Plaintiff's counsel failed to dismiss any of the claims when it became clear during discovery that they had no factual basis whatsoever," thus "exhibit[ing] a deliberate indifference to obvious facts." *Id.* at 1186. Accordingly, the Court found that CBE was entitled to recover its attorney's fees from Plaintiff and her attorney. *See id.*

20. On September 30, 2011 United States Magistrate Judge Nancy Stein Nowak of the United States District Court for the Western District of Texas filed her Report and Recommendation in *Rosa Hernandez v. Michael J. Scott, P.C.* (Civil Action No. SA-10-CV-1051 OG (NN)).  <u>Def. App.</u> at 91.  In her report she recommends the court to grant Scott's motion for summary judgment, enter summary judgment in favor of Scott, and direct attorney Michael Agruss to show cause why he should not be sanctioned for violating Rule 11.  *Id.* at 100-01.  Coming to her conclusion, Magistrate Judge Nowak stated that "Lamet's second letter shows fact question exists about Hernandez's first claim – that Scott violated the Act by

communicating with her knowing she had an attorney – because the letter shows Hernandez was not represented 'by an attorney with respect to [the] debt.'" *Id*. at 95.  She then states "[t]he summary-judgment evidence also shows no fact question exists about Hernandez's second claim – that Scott violated the Act by communicating with Hernandez after Lamet sent his first letter – the letter notifying Scott that Hernandez was represented and demanding that Scott cease further communications with Hernandez – because Hernandez was unrepresented." *Id*.  The case at hand is an identical case to *Hernandez*.  Due to the identical nature of the case and the recommendation by Magistrate Judge Nowak, Scott asks the Court to impose 28 U.S.C. § 1927 sanctions and require Plaintiff's counsel to personally satisfy Scott's excess costs and attorneys' fees reasonably incurred as a result of such conduct.

21.     Last, on August 16, 2011, the United States District Court, N.D. of Illinois, Eastern Division passed down the decision of *Lancaster v. Trans Union, LLC*, No 09-C-1968 (N.D. Ill. 2011).  <u>Def. App</u>. at 103.  In this case, the Honorable John F. Grady granted 28 U.S.C. § 1927 sanctions against Plaintiff's counsel's Law Firm of Krohn & Moss, and specifically named partner Adam J. Krohn.  <u>Def. App</u>. 106.  The court stated that Mr. Krohn "filed the complaint without performing an adequate pre-filing inquiry and without having a basis for claiming causation or damages." *Id*.  The court also stated that him and his co-counsel Adam T. Hill recklessly continued to pursue the action as well as filing baseless responses to defendant's motions. *Id*.  Counsels' actions in *Lancaster* are the same as in case at bar and Scott requests the same relief be granted here.

## IV.

## CONCLUSION

22.     Based on the frivolous nature of this lawsuit and Plaintiff's counsel's bad faith and

improper motive, Defendant Michael J. Scott, P.C. prays that Plaintiff's counsel, Mr. Agruss, as well as the Law Firm of Krohn & Moss, be sanctioned under 28 U.S.C. § 1927 in the amount of Scott's excess costs and attorney's fees incurred as a result of Mr. Agruss' multiplication of the case and for any further relief to which Scott may justly show itself entitled.

Respectfully submitted,

**ROBBIE MALONE, PLLC**

/s/Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
JACOB C. BOSWELL
State Bar No. 24061269
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
(214) 346-2625
(214) 346-2631 FAX
E-mail: rmalone@rmalonelaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via ECF on this 4th day of October, 2011 to:

Michael S. Agruss
Attorney at Law
Krohn & Moss, Ltd
10 N. Dearborn St., 3rd Floor
Chicago, IL 60602

/s/Robbie Malone